IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

ELISEO MORALES GARCIA; MARIBEL MENA MELENDEZ

    Debtor

NOREEN WISCOVITCH RENTAS, CHAPTER 7 TRUSTEE

    Plaintiff/Trustee

      vs.

NELSON L. MARCHAND SERRANO ET. AL.

    Defendants

CASE NO. 04-12461 (ESL)

CHAPTER 7

ADV. PROC. NO. 15-00052 (ESL)

OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion to Dismiss* (Docket No. 34) filed by co-defendants, Francisco J. Amundaray-Rodriguez, Esq. and María E. Villares-Señeriz, Esq., (hereinafter referred to as the "Defendants") arguing: (i) lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6); (ii) the recoupment claim defense was made by the state court defendants against the Debtors and/or their bankruptcy estate; and (iii) the document attached and filed as an Exhibit to the complaint pertaining to this adversary proceeding is in the Spanish language, without a certified translation and thus, should be disregarded by the court (Docket No. 34). The Trustee filed her *Opposition to Motion to Dismiss* (Docket No. 41) arguing that: (i) the allegations contained in the complaint are sufficient to proceed with the cause of action. The complaint does not rest on the Exhibit; (ii) whether the Defendants' request for a money judgment against the estate is in the form of a recoupment defense (recoupment doctrine) and therefore did not constitute a violation of the automatic stay is not an issue for the court to decide on a motion to dismiss pursuant to Fed. R.

-1-

Bankr. P. 12(b)(6); (iii) the recoupment doctrine is inapplicable because there is no claim from a plaintiff directly against a defendant. The estate has simply appeared in state court stating that it is the owner of 78.54% of the hereditary shares (participations) and has not requested payment from the former heirs; and (iv) the Defendants violated the automatic stay pursuant to their request for an affirmative money judgment against the Bankruptcy estate in excess of the funds deposited in state court. The Defendants filed their *Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss* (Docket No. 46) asserting the following arguments: (i) this court lacks subject matter jurisdiction under the probate exception rule; (ii) Defendants do not intend to collect any monies from the Bankruptcy estate, given that it is a no asset Chapter 7 case, they are only defending their rights and want to demonstrate that the Morales-Mena Estate is not entitled to receive part of the funds consigned in the state probate court given the merits of their recoupment defense; (iii) Plaintiff's allegation that the Defendants are requesting in state court more money than the funds which are consigned in state court is untrue. The heirs' recoupment claim is for the amount of $2,637,368.16 not $4,508,196.00, contrary to Plaintiff's allegations in the complaint; and (iv) the Trustee cannot file an adversary proceeding to request the stay of state probate proceedings regarding the division of an Estate and to liquidate a disputed contract claim.

For the reasons stated herein, the Defendants' *Motion to Dismiss* is hereby denied.

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

## Background

The travel of this case and its adversary proceedings is extensive and intricate. This is the fourth adversary proceeding filed in this bankruptcy case during the span of twelve years. Three of the four adversary proceedings that have been filed are related to the proceedings in

probate court of the estate of three (3) siblings; namely, María Josefa, María de las Mercedes, and José Antonio González Rodríguez (the "Gonzalez Estate"), which have been ongoing since the year 1999 (state court case No. DAC 1999-1252).  Prior to the bankruptcy filing, twenty-one (21) heirs of the González Estate executed public deeds titled, "Sale of Hereditary Right, Cession of Rights and Shares" by which they sold to the Debtors their respective hereditary participation (hereditary shares) in the González Estate, which constituted 78.54% of the total hereditary shares (participation).  The twenty-one public deeds were executed on the following dates: (i) one (1) that was paid in full on November 26, 1996; (ii) one that remains unpaid on May 24, 1999; (iii) six (6) that remain unpaid on November 4, 1999; (iv) one that remains unpaid on November 10, 1999; and (v) twelve (12) that remain unpaid on November 19, 1999. The Debtors paid 10% as a down payment of the agreed upon sales price which amounts to $176,952. The total sales price for the 78.54% of the hereditary shares amounts to $1,570,809. See Wiscovitch Rentas v. Gonzalez Claudio (In re Morales Garcia), 484 B.R 1, 7-9 (Bankr. D.P.R. 2012), rev'd, 507 B.R. 32 (B.A.P. 1st Cir. 2014)[1].

Thus, the remaining promissory notes (twenty promissory notes, given that one was paid in full) that were executed were unsecured for the remaining 90 percent, and it is undisputed that the Debtors defaulted on the remaining 90% of the purchase price. The Gonzalez Estate was comprised of three (3) parcels of real property located in Vega Baja, Puerto Rico. On June 14, 2000, the probate court entered a judgment which identified the assets and all of the heirs of the Gonzalez Estate and their respective hereditary shares. The Debtors were not identified in the judgment. The probate court on May 9, 2002 ordered that the real properties be sold through public auction, and the same were sold on December 20, 2004, eleven (11) days subsequent to Debtors' bankruptcy filing.  The buyers paid $3,665,000 for the real estate properties and the sale proceeds were consigned with the probate court (Commonwealth of Puerto Rico Court of First Instance). See In re Morales Garcia, 507 B.R. 32. Please refer to In re Morales Garcia, 507 B.R. 32, for an overview of the case and the probate court proceedings.

---

[1] The First Circuit Bankruptcy Appellate Panel determined that the funds in question were not property of the bankruptcy estate and fell within the probate exception to federal jurisdiction.

-3-

On December 9, 2004, Eliseo Morales García and Maribel Mena Meléndez (the "Debtors") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code (lead case No. 04-12461[2]). The Debtors in their Schedule B- Personal Property, included the 78.54% of the inheritance participation in the González Estate with a current market value of $2,877,000 (lead case, Docket No. 17). The Debtors in their Schedule F- Creditors Holding Unsecured Nonpriority claims included the following claims based on promissory notes held by those (creditors) that had sold to the Debtors their hereditary shares (participations) of the Gonzalez Estate: (i) balance owed under promissory note to Carmen María V. González Santiago in the amount of $216,146.37; (ii) balance owed under promissory note to Mercedes González Claudio in the amount of $22,406.75; (iii) balance owed under promissory note to Rosa María Raquel González Santiago in the amount of $166,317; (iv) balance owed under promissory note to Juan Ramón González Rivera in the amount of $35,944.42; (v) balance owed under promissory note to Carlos Ivan González Nogueras in the amount of $35,944.42; (vi) balance owed under promissory note to Josefa María González Vega in the amount of $153,058.10; (vii) balance owed under promissory note to Aida Rosa González Rivera in the amount of $35,944.42; (viii) balance owed under promissory note to Manuel A. González Alvarado in the amount of $77,317; (ix) balance owed under promissory note to Octavio Manuel González Rivera in the amount of $35,944.42; (x) balance owed under promissory note to Lizzette Maritza Marchand González in the amount of $55,431.69; (xi) balance owed under promissory note to Magali Minerva Marchand González in the amount of $55,431.69; (xii) balance owed under promissory note to Nelson Javier Marchand González in the amount of $55,431.69; (xiii) balance owed under promissory note to María Mercedes Molina González in the amount of $42,120.53; (xiv) balance owed under promissory note to Sandra Esther Molina González in the amount of $42,120.53; (xv) balance owed under promissory note to Olga E. Ortiz González in the amount of $143,770.15; (xvi) balance owed under promissory note to Estefania Rolón Claudio in the amount of $99,707.57; (xvii) balance owed under promissory note to Jesus

---

[2] References to the lead case are to the entries and documents filed in the bankruptcy case, case number 04-12461(ESL).

-4-

Vicente Simon González in the amount of $10,622.70; (xviii) balance owed under promissory note to María Cristina Simon González in the amount of $10,622.70; (xix) balance owed under promissory note to Héctor Adrián Torres Dávila in the amount of $49,871.28; and (xx) balance owed under promissory note to Rene Edgardo Torres Dávila in the amount of $49,871.28. As it is listed on Schedule F, the total amount owed under the various (twenty) promissory notes for the purchase of 78.54% of the inheritance participation in the estate of Carmen González Santiago and others is $1,394,025.

On April 26, 2005, the Debtors filed adversary proceeding No. 05-00102 (Morales Garcia v. Hon. Luisa M. Colom Garcia Superior Judge, Court of First Instance, Bayamon Part, et als.) seeking a determination that the public sale of the real estate properties which occurred during the pendency of the bankruptcy proceedings violated the automatic stay and sought an Order declaring the sale of the real properties that were part of the González Estate was null and void. The buyers of the real properties moved to dismiss premised on the legal argument that the real properties were not part of Debtors' bankruptcy estate and thus, were not subject to the automatic stay. Subsequently, on October 18, 2007, this court entered an Opinion and Order dismissing this adversary proceeding for failure to state a claim. The court held as follows: "…Plaintiffs own 78.64% of the hereditary participations in the González family hereditary estate but said participations do not grant them a legal or equitable interest in the [s]ubject [p]roperties. Therefore, the [s]ubject [p]roperties are not property of the estate and the public auction held on December 20, 200[4] was not subject to the automatic stay provision of the Bankruptcy Code upon Plaintiff's bankruptcy filing." (Adversary proceeding 05-00102, Docket No. 145). The Debtors appealed to the Bankruptcy Appellate Panel. However, the Defendant-Appellees requested their right to have this appeal heard before the U.S. District Court for the District of Puerto Rico pursuant to 1st Cir. BAP. R. 8001-3(b)(2) and, thus, the appeal was transferred to the United States District Court for the District of Puerto Rico. The Applellants/Debtors filed a motion for voluntary dismissal of the appeal in District Court. On

February 5, 2008, the United States District Court for the District of Puerto Rico entered a Judgment by which it dismissed the appeal with prejudice.

Subsequently, on May 27, 2009, the Debtors requested conversion of the case from Chapter 11 to Chapter 7 pursuant to 11 U.S.C. §1112(a) (lead case, Docket No. 205), and the same was granted on May 28, 2009 (lead case, Docket No. 207).

On October 29, 2010, the Chapter 7 Trustee ("Trustee") filed an adversary proceeding No. 10-00170 (Wiscovitch Rentas/ Plaintiff/Trustee v. Orlando González Claudio; Mercedes González Claudio et al.), seeking a determination that the Debtors had an interest in 78.54% of the proceeds generated from the sale of the González Estate's real properties and also requested the turnover of the monies generated from the sale (in the amount of $2,878,491) that were consigned in the state court. In this adversary proceeding, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) based upon Stern v. Marshall, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) was filed by codefendants Héctor and Rene Torres Dávila ("Torres Defendants") arguing that this court lacked subject matter jurisdiction to entertain this adversary proceeding because "claims that are keyed only to state law rights or privileges are to be left to the state courts to decide." The Torres Defendants argued that the state court had assumed jurisdiction as to the validity of the contracts controversy, and thus this adversary proceeding is non-core pursuant to 28 U.S.C. §157(b)(2). This court denied the Torres Defendants' motion to dismiss and held the following: "… the Torres Defendants have not placed this court in a position to even evaluate which controversies or allegations have been brought before the PR Courts. Moreover, the PR Court of Appeals already ruled that this court has 'exclusive jurisdiction to determine what is property of the bankruptcy estate.' See the Opinion & Order issued in Adv. Proc. 05-00102, Docket No. 145, p. 17). This court finds that a turnover action is a fundamental bankruptcy matter that 'stems from the bankruptcy itself' and 'would necessarily be resolved in the claims allowance process' because it intricately hinges on the proper constitution of the bankruptcy estate. Stern v. Marshall, 131 S. Ct. at 2618. As ruled in Braunstein v. McCabe, a turnover proceeding 'invokes the [bankruptcy] court's most basic equitable powers to gather and manage

property of the estate.' 571 F. 3d at 122. Therefore, this court has subject matter jurisdiction to entertain the instant core adversary proceeding and can ultimately issue a final determination on its merits in accordance with Stern v. Marshall." Wiscovitch Rentas v. González Claudio (In re Morales García), 471 B.R. 324, 330 (Bankr. D.P.R. 2012).

On January 4, 2012, the Debtors' were granted a discharge pursuant to 11 U.S.C. §727 (lead case, Docket No. 263).

On December 14, 2012, this court, also in adversary proceeding 10-00170, granted Plaintiff's motion for summary judgment and held that the, "Debtors duly purchased 78.54% of the [r]eal [e]state [p]roperties of the Gonzalez Estate and because the Debtors acquired said shares pre-petition, they are now part of the bankruptcy estate pursuant to Section 541 of the Bankruptcy Code. And since the [r]eal [e]state [p]roperties were sold at public auction and the proceeds are consigned at the PR Court of First Instance, the bankruptcy estate is entitled to retrieve the equivalent of 78.54% of those proceeds." Thus, the Trustee was entitled to recover 78.54% of the proceeds from the public auction pursuant to 11 U.S.C. §542. See Wiscovitch Rentas v. Gonzalez Claudio et al., (In re Morales Garcia), 484 B.R. 1, 14 (Bankr. D.P.R. 2012), rev'd, 507 B.R. 32. Subsequently, this case was appealed and it was reversed by First Circuit Bankruptcy Appellate Panel which held as follows: "[w]e conclude that the bankruptcy court erred on the merits in granting summary judgment for turnover under §542(a). We further conclude that, insofar as the trustee's complaint in a demand for an order requiring a distribution of assets from a probate estate that are in the jurisdiction and indeed possession of the CFI, acting as a probate court, the matter falls within the probate exception to federal jurisdiction." In re Morales Garcia, 507 B.R. at 42.

The Adversary Proceeding Before the Court

On February 19, 2015, the Trustee filed the instant adversary proceeding premised upon an alleged violation of the automatic stay, which consisted of the Defendants filing on May 30, 2014, a motion for summary judgment in the state court (the state probate case, Case No. D AC 1999-1252) requesting that judgment be entered against the Debtors for breach of contracts and,

thus, resolving that the deeds by which the Debtors purchased the hereditary shares were null. Moreover, the Defendants in their motion for summary judgment claimed that the Debtors owed the Gonzaález Estate $4,508,196 plus damages and to order the Bankruptcy estate to pay the amount of $2,637,368.16, plus attorney's fees and costs (Docket No. 1). On February 20, 2015, the Trustee filed an *Amended Complaint* (Docket No. 15) to include a copy of the motion for summary judgment which was filed in stated court as Exhibit I. On March 6, 2015, the court ordered that a preliminary pretrial and scheduling conference pursuant to Fed. R. Bankr. P. 7016(b) incorporating Fed. R. Civ. P. 16, and LBR 7016-1 would be held on June 26, 2015 (Docket No. 27).

On May 28, 2015, the Trustee filed the *Estate Cash Receipts and Disbursements Record* (lead case, Docket No. 326) disclosing that the Trustee has $0 funds on hand. Thus, the bankruptcy estate is devoid of monies (funds). On June 23, 2015, the Trustee filed a *Motion for Continuance of Hearing* (Docket No. 31), that the preliminary pretrial be held after September 23, 2015. The same was granted on June 25, 2015. The court rescheduled the preliminary pretrial and scheduling conference for October 16, 2015 (Docket No. 33).

On June 26, 2015, the Defendants filed the *Motion to Dismiss* contending the following: (i) the recoupment claim defense was made by the state court defendants against the Debtors and/or their bankruptcy estate. "The U.S. Court of Appeals for the First Circuit has held that the automatic stay normally bars collection of a credit against the debtor by 'setoff,' see 11 U.S.C. §362(a)(7), as opposed to a 'recoupment' which normally is not barred. See In re Holyoke Nursing Home, Inc., 372 F. 3d 1 (1st Cir. 2004);" (ii) lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); (iii) failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6); and (iv) the copy of the motion for summary judgment that was filed in state court and was included as an Exhibit to the complaint pertaining to this adversary proceeding is in the Spanish language, without a certified translation and thus, should be disregarded by the court (Docket No. 34). On July 7, 2015, the court ordered the Plaintiff to

show cause within thirty (30) days why the adversary proceeding should not be dismissed for the reasons stated by the Defendants in the motion to dismiss (Docket No. 37).

On August 14, 2015, the Trustee filed her *Opposition to Motion to Dismiss* arguing that: (i) the allegations contained in the complaint are sufficient to proceed with the cause of action. The complaint does not rest on the Exhibit; (ii) "[t]his is especially true in light of Defendants' admission that they did in fact requested resolution of the contract post-petition and a money judgment against the Estate in the amount of $4,508,196.00 without requesting permission of the Bankruptcy Court;" (iii) whether the Defendants' request for a money judgment against the estate is in the form of a recoupment defense (recoupment doctrine) and therefore does not constitute a violation of the automatic stay is not an issue for the court to decide on a motion to dismiss pursuant to Fed. R. Bankr. P. 12(b)(6); (iv) the recoupment doctrine is inapplicable because there is no claim from a plaintiff directly against a defendant. The Estate of Eliseo Morales has never sued the Defendants (the former heirs) in state court for collection of monies or any other claim. The Estate (bankruptcy) of Eliseo Morales has simply appeared in state court stating that it is the owner of 78.54% of the hereditary shares (participations) and has not requested payment from the former heirs; and (v) the Trustee alleged that the Defendants' violation of the automatic stay consisted of: (a) alleging breach of contracts; (b) requesting resolution of the sales contracts; and (c) requesting a money judgment from state court against the bankruptcy estate to pay $2,637,368.16 to the former heirs without requesting relief from stay (Docket No. 41).

On September 21, 2015, the Defendants filed their *Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss* asserting the following arguments: (i) this court lacks subject matter jurisdiction under the probate exception rule. "From a simple reading of the BAP's Opinion and Order, this Honorable Court can easily conclude that all controversies arising out of the present case should be resolved by the CFI [Court of First Instance], the court with jurisdiction to do so;" (ii) "[t]he recoupment defense can also be used in any proceeding, involving monetary relief, it does not have to be in a collection of money against defendants.

The division of hereditary rights has the same effect as a request for distribution of money, and the intervention complaint filed by the debtors and Plaintiff is asking the court to give them the money to be distributed to them, instead of the defendants, who are the recognized heirs. It is simply preposterous that the Plaintiff would dare say they are not making any claim or requests for monetary relief against defendants;" (iii) Defendants do not intend to collect any monies from the Bankruptcy estate, given that it is a no asset Chapter 7 case, they are only defending their rights and want to demonstrate that the Morales-Mena Estate is not entitled to receive part of the funds consigned in the state probate court given the merits of their recoupment defense; (iv) Plaintiff's allegation that the Defendants are requesting in state court more money than the funds which are consigned in state court is untrue. The heirs' recoupment claim is for the amount of $2,637,368.16 not $4,508,196.00 contrary to Plaintiff's allegations in the complaint. The intervenors, now substituted by Plaintiff Trustee, claimed in state court the amount of $2,878,480.01 which is $241,111.85 more than the recoupment claim; and (v) the Trustee cannot file an adversary proceeding to request the stay of state probate proceedings regarding the division of an Estate and to liquidate a disputed contract claim, even when such claim was already part of that proceeding before the state probate court (Docket No. 46).

At this juncture, the only matter before the court is the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

Applicable Law and Analysis

*Defendants' motion to dismiss*

The motion to dismiss filed by Defendants is based upon four arguments[3]: (i) lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); (ii) failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6); (iii) there is no automatic stay violation when a recoupment claim is made against debtors and/or the bankruptcy estate; and

---

[3] The Defendants argued that: "… the appearing co-defendants respectfully understand that this adversary proceeding should be dismissed since there is no automatic stay violation when a recoupment claim is made against the debtors and/or their bankruptcy estate, such as in the case at hand; because this Honorable Court lacks subject matter jurisdiction to entertain this adversary proceeding and in light of the fact that the document attached and filed as exhibit to the complaint, in which Plaintiff relies on as 'foundation' to her allegations, is in the Spanish language, without a certified English translation" (Docket No. 34, pg. 3).

(iv) the Exhibit that was attached to the complaint in this adversary proceeding and which the Plaintiff relies on as "foundation" is a copy of the motion for summary judgment in the Spanish language that was filed in state court without a certified translation and thus, should be disregarded by the court. The motion to dismiss has four sections, namely; (i) introduction; (ii) motion to dismiss; (iii) discussion which is further divided into two subsections, namely: (a) "the recoupment claim filed by the appearing defendants on behalf of the other defendants does not violate the automatic stay;" and (b) "the exhibit attached to the complaint is in the Spanish language and the should be disregarded by this Honorable Court; and [iv] Prayer for relief (Docket No. 34).

The Defendants in their motion to dismiss provide the legal standard for a motion to dismiss premised upon Fed. R. Civ. P. 12(b)(1) and (b)(6) (Docket No. 34, pgs. 3-6). After providing the legal standard, the Defendants conclude the following: "[t]herefore, dismissal is warranted under Rule 12(b)(6) where a plaintiff fails to establish each particular element of the claim or claims presented in the pleadings, or claims upon which relief may be granted. This is precisely the situation at hand" (Docket No. 34, pg. 6).

The Defendants under subsection (a) of part III (Discussion) of the motion to dismiss discuss the purpose of the automatic stay. The Defendants argue that the provisions of the automatic stay are not applicable to a debtor and/or a trustee who has initiated a prepetition lawsuit against a creditor. Defendants allege that:

> "[c]onsequently, the intervention complaint filed by the debtors in state court, and any defenses r[aised] by defendants, and/or their relatives (through their attorneys) are not subject to the automatic stay provisions of 11 U.S.C. §362. Precisely, in the state [c]ase No. DAC1999-1252 at the CFI defendants presented several defenses against debtors pursuant to the recoupment claim doctrine."

The Defendants' proceed to discuss the distinction between setoff and recoupment in bankruptcy (Docket No. 34, pgs. 9-13). The Defendants also discuss in their motion to dismiss,

-11-

the different remedies (specific performance, rescission/resolution) that they have under the Puerto Rico Civil Code when one of the contracting parties in a bilateral contract does not comply with his obligation and/or defaults on the same (Docket No. 34, pgs. 14-18). The Defendants argue that, "[i]t goes against the provisions of the Civil Code to argue that they paid for these hereditary rights with the promissory notes because they completely defaulted on the payments on such promissory notes. Furthermore, by virtue of law, the trustee's intervention complaint sh[ould] have been suspended, when she admitted that the debtors failed to honor the promissory notes." Thus, the Defendants and/or their heirs have determined to resolve the contracts (promissory notes) ("Defendants and their heirs were willing to sell their hereditary rights to the debtors, provided that they pay the full price agreed by the parties. Since the debtors failed to comply with their obligation to pay the price, defendants and/or their heirs correctly determined to resolve the contracts") (Docket No. 34, pg. 17).

The Defendants further argue in their motion that they did not violate the automatic stay because their "recoupment claim emanates from the same transaction that gave rise to the debtors' claim. The automatic stay does not bar such claim" and they also allege that the, "… damages claim is also a recoupment claim, inasmuch as it also emanates from the same transaction that gave rise to the debtors' claim: the aforementioned deeds and promissory notes and the obligations that emanate from these documents" (Docket No. 34, pg. 20).

The Defendants also argue that they did not violate the automatic stay in the probate court proceedings in which the Chapter 7 Trustee is litigating the debtors' intervention complaint, on the grounds that "…nor the defenses raised by the defendants or their relatives constitute a violation because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights" (Docket No. 34, pg. 21). The Defendants further argue that, "…the automatic stay does not prevent defendants from defending their legal rights in the same action. As a result, the appearing defendants, or any other named defendant for that matter has committed no violation of the automatic stay, and consequently this Honorable Court should dismiss the instant adversary proceeding" (Docket No. 34, pg. 22).

Defendants also contend that the Trustee's action constitutes a "clear violation" of the opinion rendered in the case of In re Morales Garcia, 507 B.R. 32 and that the "BAP clearly instructed the parties to litigate all their competing claims with varying priorities against the probate estate in the CFI[4]." (Docket No. 34, pg. 23). They argue that: "…plaintiff insists in invoking this Honorable Court's jurisdiction to impede defendants from bringing one of their claims against the probate estate assets in the Court with proper jurisdiction, as recognized by the BAP. Not only the automatic stay does not foreclose litigation of this claim, but also the BAP has already held that the CFI has exclusive jurisdiction to entertain the same. Thus, defendants respectfully understand that this Honorable Court lacks subject matter jurisdiction to entertain this adversary proceeding. It is important to point out that the CFI also has jurisdiction to determine if the automatic stay prevents the litigation of the competing claims presented to that Court." (Docket No. 34, pg. 23).

Lastly, the Defendants argue that the document attached and filed as an Exhibit to the complaint pertaining to this adversary proceeding is in the Spanish language, without a certified translation and thus, should be disregarded by the court pursuant to P.R. LBR 9070-1(c) and 48 U.S.C. §864.

---

[4] The Defendants stated that the BAP in In re Morales Garcia, held the following:

"Here, the trustee's complaint, in seeking an order requiring the CFI to distribute the funds in its jurisdiction and possession, asks the bankruptcy court to dispose of—or at least endeavour to dispose of—property in the custody of the CFI, serving here as a probate court. The funds in question, the proceeds from sale of the Properties, are in the in rem jurisdiction and custody of the CFI. Under the probate exception, their distribution is the CFI's exclusive preserve. Indeed, only the CFI has comprehensive jurisdiction over all claims against those assets. Though expressing no opinion on Puerto Rican law on the subject, it is hard to imagine how a distribution can or should be made without regard for the extent of the probate estate's assets and the extent of the competing claims with varying priorities. See Dulce v. Dulce, 233 F. 3d 143, 148 (2d Cir. 2000) (the probate exception was not implicated where the federal court would determine the amount of a claim against the probate estate but not '[w]hether the plaintiff's share would actually result in his receipt of money, and how much,' matters which 'would depend on the probate court's findings as to the extent of the estate's assets and the extent of the competing claims with varying priorities'). Therefore, to the extent that the trustee's complaint demanded that the bankruptcy court order the CFI to distribute proceeds on a basis other than §542(a) of the Bankruptcy Code, the complaint fell within the probate exception, and the bankruptcy court erred in adjudicating it.

For the reasons set for above, we REVERSE the bankruptcy court's judgment directing the Clerk of the CFI to turn over the proceeds and REMAND for the entry of an order consistent with this opinion, dismissing any remaining remands for relief for lack of jurisdiction." In re Morales Garcia, 507 B.R. at 44-45.

-13-

The Trustee's *Opposition to Motion to Dismiss* is based upon the following arguments: (i) the allegations contained in the complaint are sufficient to proceed with the cause of action. The complaint does not rest on the Exhibit; (ii) "[t]his is especially true in light of Defendants' admission that they did in fact requested resolution of the contract post-petition and a money judgment against the Estate in the amount of $4,508,196.00 without requesting permission of the Bankruptcy Court;" (iii) whether the Defendants' request for a money judgment against the estate is in the form of a recoupment defense and therefore does not constitute a violation of the automatic stay is not an issue for the court to decide on a motion to dismiss pursuant to Fed. R. Bankr. P. 12(b)(6); (iv) the recoupment doctrine is inapplicable because there is no claim from a plaintiff directly against a defendant. The Estate of Eliseo Morales has never sued the Defendants (the former heirs) in state court for collection of monies or any other claim. The Estate (bankruptcy) of Eliseo Morales has simply appeared in state court stating that it is the owner of 78.54% of the hereditary shares (participations) and has not requested payment from the former heirs; and (v) the Trustee alleged that the Defendants' violation of the automatic stay consisted of: (a) alleging breach of contracts; (b) requesting resolution of the sales contracts; and (c) requesting a money judgment from state court against the bankruptcy estate to pay $2,637,368.16 to the former heirs without requesting relief from stay.

## Discussion

This court will now proceed to discuss the merits of the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). However, at this juncture, the court will not address the Defendants' arguments regarding the merits of the willful violation of the automatic stay, in particular whether the defenses presented against the debtors in the probate state court fall within the recoupment claim doctrine (exception) because the same originated from the same transaction that gave rise to the debtors' claim and thus, do not constitute a violation of the automatic stay. Also, the court will not delve into the issue of whether a breach of contract claim (in which the Defendants request as a remedy the rescission of the promissory notes) and the damages and interest stemming from said breach constitute a recoupment claim. "The

-14-

doctrine of recoupment should be narrowly construed in bankruptcy cases. Taken in context, however, this simply means that the doctrine should be applied correctly. The major reason why care should be taken in the doctrine's application is that improper application of the doctrine, coupled with its ostensibly exempt status under section 553(a) and 362, could undermine the fundamental purposes of these statutory provisions. Consistent with preserving the integrity of sections 553 and 362, application of the doctrine in any particular case is sometimes scrutinized from the perspective of its effect on the fundamental policies of these provisions." Alan N. Resnick & Henry J. Sommer, 5 <u>Collier on Bankruptcy</u> ¶ 553.10[3] (16th ed. 2015). This court finds that a motion to dismiss is the improper procedural mechanism to assert the recoupment doctrine as a defense to the alleged willful violation of the automatic stay. "Setoff and recoupment are also treated as forms of counterclaim for procedural purposes. Historically, recoupment is the progenitor of the compulsory counterclaim, while setoff is the progenitor of the permissive counterclaim. In practice, setoff and recoupment may be asserted either as counterclaims seeking affirmative relief, or as defenses seeking only to reduce the size of a debt. Although recoupment may be pleaded as a counterclaim, no affirmative recovery is generally allowed. <u>Id.</u> at ¶553.11.

*Fed. R. Civ. P. 12(b)(1)*

Fed. R. Civ. P. 12(b)(1), applicable in bankruptcy adversary proceedings through Fed. R. Bankr. P. 7012, a party may request the dismissal of a complaint for "lack of subject matter jurisdiction." Fed. R. Bankr. P. 7012(b)(1).

28 U.S.C. §1334(b) provides in pertinent part: "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" 28 U.S.C. §1334(b). 28 U.S.C. §157(a) provides that: "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall referred to the bankruptcy judges for the district." 28 U.S.C. §157(a). Section 157(b) of Title 28 further provides that: "[b]ankruptcy

-15-

judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. §157(b)(1). The United States District Court for the District of Puerto Rico, by a standing Order dated July 19, 1984, has referred to the bankruptcy court pursuant to 28 U.S.C. §157(a) all cases in which jurisdiction is premised under title 11 of the United States Code. See L.Cv.R. 83K(a) (D.P.R. 2009).

Contested matters and adversary proceedings are subsets of the bankruptcy case and which raise litigated issues (controversies) arising in or under or which are related to the case. See Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §2.2 Vol. 1 (5th ed. 2015), p. 35. "Issues arise with respect to what is the 'bankruptcy case.' For example, the bankruptcy court has exclusive jurisdiction to terminate, annul, or modify the automatic stay because it is part of the bankruptcy case itself. However, the state courts have concurrent jurisdiction to determine whether the automatic stay applies in a particular state court proceeding." Id. Thus, a state court may make a valid and binding determination regarding the applicability of the automatic stay to a prepetition state court proceeding that arises in or is related to a bankruptcy case. See Pope v. Wagner (In re Pope), 209 B.R. 1015, 1020-1021 (Bankr. N.D. Ga. 1997); Siskin v. Complete Aircraft Servs. (In re Siskin), 258 B.R. 554, 562 (Bankr. E.D.N.Y. 2001)("Moreover, there is no language in Section 1334 of the Judiciary Code or in Section 362 of the Bankruptcy Code which deprives a state court of jurisdiction to determine whether the automatic stay applies to an action before it").

The Court infers from the parties' motions in this adversary proceeding, that the issue of whether the Defendants have wilfully violated the automatic stay pursuant to 11 U.S.C. §362(a) is not before the state probate court and thus, the state probate court has not adjudicated this issue. Therefore, this court concludes that it has subject matter jurisdiction to rule upon the applicability of the automatic stay to a prepetition state court proceeding.

-16-

In the instant case, the Defendants contend that the court lacks subject matter jurisdiction over this particular adversary proceeding under the probate exception rule based upon the holding of the Bankruptcy Appellate Panel for the First Circuit in In re Morales Garcia, 507 B.R. 32. The Defendants argue that in In re Morales Garcia, the court, "…clearly and unequivocally ruled that it is the state probate court that has exclusive jurisdiction to distribute the funds, and to determine the extent of the competing claims with varying priorities against those assets, now consigned at the Court of First Instance ("CFI")" (Docket No. 46, pg. 3).  In the case of In re Morales Garcia, the B.A.P. held that:

> "This is not to say that the trustee has no right to distribution of the funds, only that the right (if it exists at all) is not in the nature of turnover under §542(a). The Trustee's complaint simply demands that the bankruptcy court order the CFI to distribute to the trustee 78.54 percent of the consigned proceeds of the sale of the Properties. Though we have ruled that the trustee was not entitled to that relief under §542(a), the trustee may yet be entitled to the requested distribution on other grounds. Insofar as the bankruptcy court's decision was an adjudication of the demand for an order of distribution on a basis other than §542(a), we conclude that the probate exception to federal jurisdiction deprived the bankruptcy court of subject matter jurisdiction to adjudicate it." In re Morales Garcia, 507 B.R. at 43-44.

The First Circuit B.A.P. explained that the probate exception is a judicially created doctrine which prevents federal courts from exercising jurisdiction to dispose of property that is in the custody of a state probate court. See In re Morales Garcia, 507 B.R. at 44. The probate exception is a narrow one. See Alan N. Resnick & Henry J. Sommer, 1 Collier on Bankruptcy ¶ 3.01[3][b] (16th ed. 2015)("From time to time it has been asserted that there is a court-made 'probate exception' to federal bankruptcy jurisdiction. The Supreme Court held that there is such an exception, albeit a narrow one. Jurisdictional concerns reserve to state probate courts 'the probate or annulment of a will and the administration of a decedent's estate… [and] precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.'").

The issue before the court is whether it has subject matter jurisdiction to adjudicate an alleged willful violation of the automatic stay pursuant to 11 U.S.C. §362(a) in a state court probate case in which the Trustee seeks to collect monies for the benefit of the bankruptcy estate premised upon the ownership of 78.54% of the hereditary participations (shares) which are property of the estate. The court finds that determining whether the Defendants violated the automatic stay in a state court proceeding is not infringing upon the narrow probate exception of disposing of property that is in the custody of the state probate court. The BAP's decision gave broad authority to litigate claims before the state court, but did not authorize collection action against the bankruptcy estate.

The next issue before the court is whether the instant complaint in this adversary proceeding should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), applicable to adversary proceedings through Fed. R. Bankr. P. 7012.

*Fed. R. Civ. P. 12(b)(6)*

"The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." <u>Velez-Arcay v. Banco Santander de P.R. (In re Velez-Arcay)</u>, 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing <u>Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2nd Cir.1984); <u>Citibank, N.A. v. K-H Corp.</u>, 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". <u>Surita-Acosta v. Reparto Saman Inc. (In re Surita-Acosta)</u>, 464 B.R. 86, 90 (Bankr.D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6)

motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit (the "First Circuit") established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 at **9-10 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012); Guadalupe-Báez v. Pesquera, 2016 U.S. App. Lexis 7173, *7 (1st Cir. 2016).

*Extent of the automatic stay to state court proceedings*

The court will first consider Defendants' argument that their actions in state probate court do no constitute a violation of the automatic stay because "the automatic stay does not prevent defendants from defending their legal rights in the same action. As a result, the appearing defendants, or any other named defendant for that matter has committed no violation of the automatic stay, and consequently this Honorable Court should dismiss the instant adversary proceeding" (Docket No. 34, pg. 22).

Courts have held that, "defensive acts by defendants (whether bankrupt or not) are not considered automatic stay violations" because the automatic stay should not tie the hands of defendants while plaintiff-debtors have "free reign to litigate." See Gordon v. Whitmore (In re Merrick), 175 B.R. 333, 337-338 (9th Cir. B.A.P. 1994). The 9th Circuit Bankruptcy Appellate Panel in In re Merrick discussed this particular issue and stated as follows:

"The automatic stay gives the debtor a breathing spell from his creditors and allows the trustee to marshal assets of the estate for the benefit of creditors. While restraint of a defendant in a suit subject to prosecution by the estate arguably could contribute to an orderly processing of estate assets, we could find no case that supports the proposition that the automatic stay prevents a defendant from continuing to defend against a pre-bankruptcy lawsuit. To the contrary, there is substantial authority that the stay is inapplicable to postpetition defensive action in a prepetition suit brought by the debtor. The following portion of an opinion authored by Judge Posner is pertinent:

"For in any event the automatic stay is inapplicable to suits by the bankrupt ('debtor,' as he is now called). This appears from the statutory language, which refers to actions 'against the debtor,' 11 U.S.C. §362(a)(1), and to acts to obtain possession of or to exercise control over 'property of the estate,' §362(a)(3), and from the policy behind the statute, which is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors. H.R. Rep. No. 595, 95th Cong. & Admin. News 1978, p. 5787. The fundamental purpose of bankruptcy, from the creditors' standpoint, is to prevent creditors from trying to steal a march on each other, In re Holtkamp, 669 F. 2d 505, 508 (7th Cir. 1982), and the automatic stay is essential to accomplishing this purpose. There is, in contrast, no policy of preventing persons whom the bankrupt has sued from protecting their legal rights. True, the bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not by opposing that suit, seeking to take possession of it, subsection (a)(3) is no more applicable that (a)(1) is. Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n., 892 F. 2d 575, 577 (7th Cir. 1989*). Accord*, United States v. Inslaw, Inc., 289 U.S. App.

-20-

D.C. 383, 932 F. 2d 1467, 1473 (D.C. Cir. 1991), cert . denied, 502 U.S. 1048, 116 L. Ed. 2d 813, 112 S. Ct. 913 (1992); Merchants & Farmers Bank of Dumas Ark. v. Hill, 122 Bankr. 539, 541 (E.D. Ark. 1990).” In re Merrick, 175 B.R. at 336-337.

To determine whether a "proceeding" is subject to the automatic stay under section 362(a)(1), many courts have followed the analysis employed in the Third Circuit which is the following:

> "Whether a specific judicial proceeding falls within the scope of the automatic stay must be determined by looking at the proceeding "at its inception." "That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs." Thus, the dispositive question is whether a proceeding was "originally brought against the debtor." Maritime Elec. Co. v. United Jersey Bank, 959 F. 2d 1194, 1204-1205 (3d Cir. 1992) (citations omitted).

> "All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay. Thus, within one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue." Id. at 1204-1205; see also; Parker v. Bain, 68 F. 3d 1131, 1138 (9th Cir. 1995)(holding a claim originally brought by a person who subsequently filed bankruptcy under chapter 11 was not subject to the automatic stay); Carlson v. Norman, (In re Duncan), 987 F. 2d 490, 491 n. 2 (8th Cir. 1993) (holding that a third-party action instigated by two debtors against a third party was not subject to the automatic stay); Gecy v. Bank of Ozarks (In re Gecy), 510 B.R. 510, 522-523 (Bankr. D.S.C. 2014) (holding that debtor did not prove that defendant creditors violated automatic stay under 11 U.S.C. §362(a) with respect to their actions in a state court lawsuit because the creditors' actions involved a counterclaim that debtor asserted and were in response to that counterclaim).

The Defendants in their *Motion to Dismiss* inform that, "[i]n their answer to the debtors' intervention complaint and counterclaim (Docket No. 387-3 Adv. Proc. 10-0170 (ESL), translated at Docket No. 416-3), defendants alleged that the transactions between the parties were not only invalid, but were also extinguished (resolved or rescinded), upon the debtors' contractual breach" (Docket No. 34, pg. 18). The dockets referenced in adversary proceeding 10-00170 (Docket No. 387 translated at Docket No. 416-2, Exhibit 2) pertain to the issue the

Chapter 7 Trustee and the Defendants are currently litigating in state probate court. Exhibit 2 is the "*Amendment to Motion Requesting Substitution of Party and/or Amended Complaint of Intervention*" which was filed in state court on November 28, 2008 by the intervenors, Eliseo Morales Garcia and his wife Maribel Mena Meléndez, and the legal conjugal partnership comprised by both in which they request that they be included in the state court complaint (Case No. DAC 1999-1252, Re: Division of Inheritance) as intervenors and/or substituted as plaintiffs (with the heirs who sold their shares in the estate object of this complaint) because they bought 78.54% of the hereditary shares of the estate pertaining to this case. On December 12, 2008, the plaintiffs in the probate court case, in response to the Debtors' amended complaint of intervention, filed an *"(I) Answer to "Amendment to Motion Requesting Substitution of Party and Amended Complaint for Intervention;" and (II) Counterclaim*" (Adv. Proc. 10-00170, Docket No. 416-3, pg. 1). The state court plaintiffs' *Answer to Motion Requesting Substitution of Party and Amended Complaint for Intervention*, included their affirmative defenses and their counterclaim against the intervenors/plaintiffs (which at the time were debtors in bankruptcy proceedings). The counterclaim filed against the intervenors/plaintiffs/debtors requested to condemn the alleged intervenors to pay jointly and severally to the González Estate certain amounts claimed in paragraphs 1, 2, 3, 4 and 5 of the counterclaim plus, the amounts of costs, expenses and attorneys' fees.

Applying the principles set forth in In re Merrick and Maritime Elec. Co. v. United Jersey Bank to determine the extent of the automatic stay in state court proceedings, the court finds that the original proceeding was instigated post-petition by the Debtors upon their request to be included as intervenors/plaintiffs and/or to substitute the heirs from which they had bought 78.54% of the hereditary shares. However, the heirs in the probate court proceedings filed a counterclaim against the intervenors/plaintiffs/debtors within the context of the amended complaint for intervention filed by the Debtors. The court concludes that Defendants' position (contention) that their actions were affirmative defenses, and as such do not constitute a violation of the automatic stay because they were defending their legal rights in the same action

are misplaced, because their request is also premised upon a counterclaim filed against the intervernors/plaintiffs/debtors which, if granted, would inure to the detriment of the Debtors and thus, it would be considered an action or proceeding against the Debtors, now to the detriment of the bankruptcy estate, as the Debtors were granted the discharge. Thus, the court declines to adopt Defendants' argument that the complaint in this adversary proceeding based upon a willful violation of the automatic stay should be dismissed because they were bringing forth their affirmative defenses in the state probate case and as such, does not constitute a violation of the automatic stay.

The court will consider next whether the complaint in this adversary proceeding states a plausible claim for the relief requested which is violation of the automatic stay pursuant to 11 U.S.C. §362(a). As part of the analysis, the court must first analyze the provisions of the automatic stay.

*Violation of the Automatic Stay*

The automatic stay in 11 U.S.C. §362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 971 (1st Cir. 1997).  The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2015). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution" Id. The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. See In re Soares, 107 F. 3d at 975. Given

-23-

its utmost importance in the bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic stay." In re Soares, 107 F. 3d. at 975-976.

The First Circuit in Laboy v. Doral Mortg. Corp. (In re Laboy), 647 F. 3d 367, 374 (1st Cir. 2011) stated the following regarding whether a violation is deemed "willful:" "[a] violation is 'willful' if a 'creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case.'" In re Laboy, 647 F. 3d. at 374 citing In re McMullen, 386 F. 3d 320, 330 (1st Cir. 2004).

In the instant case, it is important to note that the Debtors received a discharge under 11 U.S.C. §727 on January 4, 2012 (lead case, Docket No. 263). The duration and termination of the automatic stay is set forth in 11 U.S.C. §362(c), which provides in pertinent part:

> "[e]xcept as provided in subsections (d), (e), (f), and (h) of this section—
>
> > (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;
> >
> > (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
> >
> > > (A) the time the case is closed;
> > > (B) the time the case is dismissed; or
> > > (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied." 11 U.S.C. §362(c)(1) & (2).

The entry of a Chapter 7 discharge order to the Debtors terminated the automatic stay in every respect other than with regard to acts against property of the bankruptcy estate, meaning that the automatic stay does not continue as to a bankruptcy debtor personally or his or her property beyond the grant of a Chapter 7 discharge to the debtor. However, pursuant to section 362(c)(1), the automatic stay continues in relation to an act against property of the estate until such property is no longer property of the estate. On May 28, 2015, the Trustee filed the most

-24-

recent *Individual Estate Property Record and Report Asset Cases* (lead case, Docket No. 325) in which she includes as part of the estate assets, the 78.54% participation in the González Estate with an estimated value of $2,877,706.39. The Trustee is the only one with standing to file an adversary proceeding for a willful violation of the automatic stay regarding acts against property of the estate.

Section 362(a)(1) stays, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceedings against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(1). "The stay provision of subsection (a)(1) is drafted so broadly that it encompasses all types of legal proceedings, subject only to the exceptions provided in section 362(b). It even covers actions or proceedings against the debtor when the debtor acts solely in a fiduciary capacity. Except as provided in section 362(b), the stay prohibits proceedings on both dischargeable and nondischargeable debts." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[3] (16th ed. 2015).

Section 362(a)(3) stays, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3). "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). It is important to note that: "11 U.S.C.S. §362(a)(1) and 362(a)(3) differ in that the stay of actions and proceedings provided for by §362(a)(1) applies only to actions brought against the debtor—the statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate. Section 362(a)(3), on the other hand, applies to actions against third parties as well as actions against the debtor." ACandS, Inc. v. Travelers Cas. & Sur. Co., 435 F. 3d 252, 259 (3d

Cir. 2006). "The trustee or debtor in possession takes control of all property of the estate in order to maintain any going concern value and to assure an equitable distribution of the property among creditors. This requires that no entity seek to interfere with these tasks by taking possession of or exercising control over property of the estate. It also requires that no entity grab non-estate property from the estate without the court supervision that comes from a stay relief proceeding" Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[5] (16th ed. 2015).

In the instant case, what may constitute "property of the bankruptcy estate" is the Debtors' right to distribution of a fraction (78.54%) of the hereditary estate (the Gonzalez Estate). See In re Morales García, 507 B.R. at 43 ("At most, the Debtors owned a right to distribution of a fraction of the hereditary estate; until the funds are distributed, the Debtors and their bankruptcy estate have no property interest in the funds themselves. Therefore, the funds in question are not property of the bankruptcy estate and may not be recovered through §542(a)"). This is precisely, the legal issue that is being litigated in the state probate case, namely whether the Debtors' right (legal interest) to the distribution of 78.54% of the hereditary estate (González Estate) which is based on promissory notes may be legally rescinded due to breach of contract, and which may result in the nullity of the promissory notes.  This is a key issue that must ultimately be resolved since it affects directly whether the 78.54% of the hereditary estate purchased by Debtors through the promissory notes (which has been converted to monies consigned in state court) is legally property of the bankruptcy estate[5].

---

[5] "If the debtor is a beneficiary of the probate estate, the debtor's rights are the property of the bankruptcy estate, and any state court adjudication of rights in the decedent's property would be subject to the stay and therefore void if relief from the stay were not obtained first, at least if the debtor or the trustee stood in a defensive rather than an offensive posture. A party seeking probate court adjudication against the debtor and affecting property of the bankruptcy estate may be liable for sanctions for violating the stay. Similarly, a tax foreclosure on a decedent's

-26-

After thoroughly analyzing the pleadings in the amended complaint, the court finds that the complaint contains sufficient factual matter that if accepted as true, constitutes a claim for the requested relief, which is premised upon a violation of the automatic stay. The Trustee in the amended complaint pleads that the Defendants on May 30, 2014, filed a request for summary judgment requesting the probate state court to adjudicate that the Debtors' purchase (executed through promissory notes) of the hereditary participations have been rescinded and thus, declare the nullity of the sales deeds and/or resolution for alleged breach of contract. In addition, the pleadings state that the Defendants also requested judgment against the bankruptcy estate in the amount of $2,637,368.16 plus attorneys' fees and costs. These averments were admitted by the Defendants in their *Motion to Dismiss* (Docket No. 34, pgs. 18-19) since the same constitute their recoupment claim defense[6] to the alleged violation of the automatic stay.

---

property in probate administration in which the debtor (and hence the bankruptcy estate) has a beneficial interest is a violation of the stay and is void.

Even though the commencement or continuation of probate proceedings may be subject to the automatic stay, relief from the stay will normally be appropriate. The administration of the decedent's estate involves issues of probate law that specialized state court is uniquely qualified to handle. In most instances, to allow the automatic stay to continue in force would only delay and frustrate the probate proceedings without serving any legitimate bankruptcy purpose." David B. Young, *The Intersection of Bankruptcy and Probate*, 49 S. Tex. L. Rev. 351, 380-381 (Winter 2007).

[6] "In their counterclaim, some of the defendants alternatively raised a recoupment claim when they alleged that assuming that eventually it is ruled that in fact [the debtors] bought 78.54% of the space of the lands of the González Farms, for said motive they OWE the Gonzalez' Estate for the principal (100%), and interests due, through November 2008, the amount of two million nine hundred thirty seven thousand three hundred ninety six dollars ($2,937,396.00), plus the interests that they agreed at 9.5% and those that from November 2008 continued accruing over the principal that they also owe the Gonzalez Estate of one million five hundred sixty thousand eight hundred dollars ($1,570,800.00), price agreed for the alleged purchases, that they have not paid, for a total owed as of November 2008 of four million five hundred eight thousand one hundred ninety six ($4,508,196.00), amount which is due and payable, either in state court case, or in the Bankruptcy Court's Proceeding, because said debt would be part of the bankruptcy estate, if the Court of First Instance recognize debtors' ownership of defendants' hereditary rights (See Docket No. 387-3 Adv. Proc. 10-0170 (ESL) translated at Docket No. 416-3). Clearly, defendants' recoupment claim emanates from the same transaction that gave rise to the debtors' claim. The automatic stay does not bar such claim. Defendants also alleged damages in their counterclaim as a result of the debtors' contractual breach (See Docket No. 387-3 Adv. Proc. 10-0170 (ESL), translated at Docket No. 416-3). This damages' claim is also a recoupment claim, inasmuch as it also emanates from the same transaction that gave rise to the debtors' claim: the aforementioned deeds and promissory notes and the obligations that emanate from these documents. In their Motion for Summary Judgment defendants repeat this claim for damages. Plaintiff contends that this additional claim violates the automatic stay. But the U.S. Court of Appeals for the First Circuit has held that "recoupment" is a 'reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of

-27-

Conclusion

In view of the foregoing, the court finds that it has subject jurisdiction to determine whether the Defendants violated the automatic stay in a state court probate court proceeding, and that such determination will not infringe upon the narrow probate exception of disposing of property that is in the custody of the state probate court. The court further finds that Defendants' argument that the complaint in this adversary proceeding should be dismissed because they were bringing affirmative defenses in the state probate court case and as such, does not constitute a violation of the automatic stay lacks merit as the allegations in the complaint and uncontested facts show that the Defendants' counterclaim is a collection action against the estate. Lastly, after having isolated the legal conclusions, and taken the *Complaint*'s well-pleaded (non-conclusory) allegations as true and drawing all reasonable inferences in favor of the Plaintiff to determine if they plausibly narrate a claim for relief based on a willful violation of the automatic stay, the court finds that the Complaint contains sufficient factual matter that if accepted as true, states a plausible claim to relief and, thus Defendants' *Motion to Dismiss* is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of May, 2016.

Enrique S. Lamoutte
United States Bankruptcy Judge

---

the same transaction.' Whether a creditor's action against a bankrupt debtor is characterized as a setoff or a recoupment will, therefore, ha[ve] an important effect on the creditor's ability to prosecute the action. Defendants contend that the damages suffered by them arose out and are related to the debtors' breach of the deeds and promissory notes for the transfer of hereditary rights (See Docket No. 387-3 Adv. Proc, 10-0170(ESL), translated at Docket No. 416-3)" (Docket No. 34, pgs. 19-20).